CODY *v.* THE STATE, 3 Howard, 27.

### MURDER.

The statute points out the method by which those who are to compose the panel shall be selected, and prescribes their qualifications; and it will be presumed that the court intrusted with this duty has performed it, by placing on the panel none but such as are good and lawful men of the county, in accordance with the provisions of the act.    The party can only rebut this presumption by challenge and proof before trial.    The question cannot afterwards be raised in another court.

It must appear by the record that the grand jurors were sworn; and if the record shows that one of them was "sworn as foreman," it will be sufficient evidence of *appointment* as such.[1]

The record, without any notice of the original *venire*, stated that fifteen persons, naming them, were drawn as a grand jury, and that A. E. D. (one of the number) was sworn as foreman of the same.    There is no statement that he was appointed foreman by the court, nor that the remainder of the jurors took the oath required by law of grand jurors.    Held, that the indictment was fatally defective

The 69th section of the act "for the punishment of crimes and misdemeanors," Rev. Code, 309, requires the district attorney to mark on all bills of indictment, the name of the prosecutor; an omission to do so is fatal to the indictment.

[1] Woodsides v. State, 2 How.

Where a juror, upon being interrogated by the court, "denied that he had formed or expressed any opinion of the prisoner's case;" and it was proved that, after he had been summoned by the officer to attend as a juror, he had said that, if he should be on the jury, "he did not think he could clear him, but should be bound to find him guilty," he was held to be clearly incompetent as a juror, and a new trial ought to be granted on that ground.

Error to Perry circuit court.

*Hays & McClung* for plaintiff in error.

*T. F. Collins*, attorney general.

Cited Chitty Cr. Law, 333-4-5; Woodsides v. State, 2 How., 655; Chitty Cr. Law, 266; Walk. R., 392.

TROTTER, J.:

This case stands upon a writ of error to the circuit court of the county of Perry. The record states that at the October term of that court, held in the year 1837, a bill of indictment was found by the grand jury, charging the plaintiff in error with the murder of one Henry Rodgers. That at the April term following, a special *venire facias*, for twenty jurors to try the prisoner, was awarded. That a jury at the same term was empanelled and sworn to try the issue made upon the plea of not guilty, which had been filed by Cody at the preceding term, and that said jury found a verdict of guilty against him at the same term. That the court thereupon proceeded and pronounced final judgment of death against him with the usual order of execution.

The first error complained of in the proceedings of the court below in this cause is, that the grand jury who found the indictment were not good and lawful men of the county of Perry. The grand jurors in each county of this state are directed to be selected by lot from the whole number of jurors summoned and attending the court under the *venire* of the term. The statute points out the method by which the jurors who are to compose the *venire* shall be selected, and prescribes their qualifications. They are to be selected by the sheriff and clerk, under the direction and control of the court, from the return of the assessor and collector of taxes, and are to be freeholders or householders of the county in which they are required to serve. It is to be

presumed that the court entrusted with the selection of the *venire* has done its duty by placing none upon it except such as are good and lawful men of the county, according to the directions of the act.   It is competent for any party, whose rights are to be affected by the action of the jury, to destroy this presumption by challenge and proof tendered at the time.   If he is silent, however, he cannot afterwards raise the objection in another court.   All exceptions to the jurors must be taken at the time of the trial.   To sustain this position, the court might refer to many adjudications of the highest courts in other states. 1 Chitty Cr. Law, 333.

We do not deem this assignment of error sufficient to affect the judgment.

It is insisted in the second place, that there is no evidence upon the record, that the grand jury were ever sworn by the court.   The record, without any notice of the original *venire*, proceeds to state that fifteen persons, naming them, were drawn as a grand jury, and that A. E. Denham (one of the number) was sworn as foreman of the same.   There is no statement that A. E. Denham was appointed foreman by the court, nor is there any statement that the remainder of the jurors took the oath required by law of grand jurors.

This we deem a fatal objection to the indictment.   The constitution of this country provides that no man shall be held to answer for any capital or infamous offense until he shall have first been charged with the same by a grand jury of the proper county.   Our laws have, with great precision, prescribed the method by which this body, entrusted with such high powers over the life and liberty of the citizens, shall be organized. They are required to be selected by lot, under the direction of the court, from the whole number of jurors summoned, and in attendance, by virtue of the *venire facias,* for the term.   When thus selected, they shall take an oath, the form of which is particularly prescribed by law.   In order to give system and certainty to their proceedings, the court is directed to appoint one of their number to act as foreman.   This appointment constitutes him the organ through which their inquisitions and proceedings are reported to the court, and particular duties are de-

volved upon him distinct from those of the other members of
the jury.   He must report all bills which may be submitted to
the jury and state, over his name to be endorsed on the same
as foreman, whether they are *true* or *not*.   His functions are,
therefore, highly important, and it should clearly appear from
the record that he has been designated by the court, and sworn
to act in this capacity.   It is his return as foreman, which places
the bill of indictment in possession of the court, and apprises it
that the grand jury have found it to be true.   It is not deemed
necessary for us to decide, whether, if the record or caption of
the indictment should show that the grand jury in a body re-
turned the bill of indictment into court with their findings en-
dorsed upon it or specially entered of record, it would not be
sufficient.   In the absence of such a statement, it must appear
of record that the foreman returned the bill, and of course that
he was authorized to act as such.   And it is an inference which
is deemed consistent with the record that he was appointed.
His appointment is included in the fact of his taking the oath.
This was the determination of this court in the case of Wood-
sides v. State, 2 How., 655, decided at the January term in
1837, and we do not feel inclined to disturb it.   But there is no
statement that the other members of the grand jury were sworn,
and we do not feel authorized to infer it from anything on the
record.   The fact that A. E. Denham was sworn as foreman of
the grand jury cannot by any rule of construction or inference
known to us, include the other and distinct fact that the residue
of the panel took an oath also.   The recital of this fact in the
bill of indictment cannot supply the omission of it in the rec-
ord.   The record may aid the indictment, but not *e converso*.
For the authority of the jury to find the indictment must be con-
tained in the record, and the bill becomes no part of the record
until it is acted upon and returned into court in the manner
prescribed by law.

   We will proceed to notice two of the other assignments of
error relied on by the plaintiff.   One is that the indictment is
defective, because there has not been endorsed upon it the name
of the prosecutor or prosecutors.   The 69th section of the act "for
the punishment of crimes and misdemeanors," Rev. Code, 309,

makes it the duty of the attorney general to mark upon all bills of indictment the name of the prosecutor or prosecutors. This statute was designed to protect the state against the payment of costs for frivolous and malicious prosecutions by affording certain record evidence of the *person* who had perverted the criminal jurisprudence of the country from its true objects, and sought to make it a means to gratify his malice and revenge. It was manifestly designed to operate as auxiliary to a previous provision contained in the 67th section of the same act, by which it is provided that, if the state fail in the prosecution of any inferior offense, the court may, if the prosecution appear to be frivolous or malicious, order the prosecutor to pay costs, etc. This act had another most important and salutary object in view, and that was to enable a party against whom a malicious and vexatious prosecution is instituted, to ascertain, with certainty, the hand from whence the injury to his reputation has proceeded. 2 Bibb. R., 210 ; 1 ib., 355. But these objects may be defeated by a neglect on the part of the officers of the state to comply with the directions of the statute. We are of opinion, therefore, that this indictment is bad for that reason.

We are clearly of opinion that, on the other ground which it was proposed to examine by the court, the circuit court ought to have awarded a new trial to the defendant. The juror R. J. Patrick was not competent to try the defendant. This is made manifest from the affidavit of William Snow, which is a part of the record. Jurors should be, in the language of the law, *exceptione majores*. That was not the condition of the juror in this instance. He had formed and expressed an opinion against the prisoner. It will not do to say in answer to this objection that his opinion may have been a mere hypothetical one, founded on mere loose rumor. When examined on his *voire dire*, he should have stated the fact, and the court would have been enabled to determine upon the character of it, whether his mind was laboring under any undue bias, unfavorable to an impartial examination and decision of the case of the prisoner. But the record shows that he denied, when asked by the court, that he had formed or expressed any opinion of the prisoner's guilt ; yet, we are furnished by the same record with proof that he had formed

an impression highly prejudicial to Cody. He declared, and that too, after he was summoned by the officer to attend the court as the juror, that if he should be upon the jury, " he did not think he could clear him, but should be bound to find him guilty." A due regard to the sanctity of the trial by jury, and the constitutional right which has been guaranteed to every man, to a trial, in all cases of the kind before the court, by an impartial jury of his country, demand, as we conceive, a new trial. McKinley v. Smith, Harding R., 167.

The judgment of the court below must, therefore, be reversed, and the cause remanded, and a new trial granted by the circuit court of Perry county.